(81 South. 44)

WESTERN UNION TELEGRAPH CO. v.
LOUISVILLE & N. R. CO.
(3 Div. 335.)

(Supreme Court of Alabama. June 29, 1918.
On Rehearing, Feb. 13, 1919.)

1. TELEGRAPHS AND TELEPHONES ☞11 —
RAILROAD RIGHT OF WAY — ESTOPPEL TO
QUESTION TITLE.

Contract, by which defendant railroad granted to complainant telegraph company a right of way, must, in so far as estoppel is concerned, be governed by rules applicable to leases, and complainant cannot, regardless of whether it was in possession at the time of the grant, contest defendant's superior title, either by bill to quiet title or to protect an easement, where it has not surrendered possession; there being no fraud, mistake, duress, or undue advantage.

2. QUIETING TITLE ☞35(3) — PEACEABLE
POSSESSION—PLEADING.

Bill to quiet alleged title to a right of way for complainant's telegraph line along defendant's railroad, between certain cities, held not to allege such peaceable possession as is necessary to maintain statutory bill.

3. TELEGRAPHS AND TELEPHONES ☞20(2) —
USE OF RIGHT OF WAY—INTERFERENCE.

If complainant telegraph company through its predecessors acquired title, and still owns a right of way on the side of defendant's railroad, between certain cities, it may maintain its bill seeking relief against any interference by defendant with proposed use.

4. JUDGMENT ☞949(2) — PLEADING — SUFFICIENCY—CONDEMNATION PROCEEDING.

In suit to quiet alleged title to right of way for complainant's telegraph line along defendant's railroad, bill and exhibits held to sufficiently show valid judgments of condemnation against defendant, founded upon jurisdiction of the parties and subject-matter.

5. EMINENT DOMAIN ☞242—CONDEMNATION
PROCEEDINGS—JUDGMENT—COLLATERAL ATTACK.

Conceding that the several defendants, in condemnation proceedings, to acquire right of way for telegraph line might have objected to the petitions because of failure to locate more definitely the line to be installed, the defect was waived by failure to object on that ground, and on collateral attack judgment is valid.

6. CORPORATIONS ☞673—FOREIGN CORPORATIONS—COMPLIANCE WITH STATUTE.

It will be presumed that a foreign corporation doing business in the state has complied with the state laws.

7. CORPORATIONS ☞657(1)—CONTRACTS WITH
FOREIGN CORPORATIONS — REPUDIATION —
NONCOMPLIANCE WITH LAW.

Where deeds and leases made to complainant telegraph company by the several condemnor corporations are executed transactions, they are not, even as between the parties, subject to repudiation on the ground that the corporations had not complied with the state laws.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

8. TELEGRAPHS AND TELEPHONES ☜16—VA-LIDITY OF LEASE—PARTIES WHO MAY QUES-TION.

If leases made to complainant telegraph company by its predecessors were void as to any excess of their terms over 20 years under the statutory limitation then in force (Code 1876, § 2190), that invalidity cannot be asserted by defendant railroad which is a stranger to the lease.

9. TELEGRAPHS AND TELEPHONES ☜16—PUR-CHASE OF COMPETING "TELEGRAPH LINE."

An unused and unlocated easement is not a "telegraph line," within the meaning of Const. 1901, § 239, providing that no telegraph company shall acquire by purchase or otherwise any other competing line.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Telegraph or Telephone Lines.]

10. EASEMENTS ☜30(1)—ABANDONMENT.

Mere nonuser of a right of way or easement acquired 'by grant or condemnation proceeding, however long continued, will not, unless accompanied by an intention to abandon clearly deducible, work an abandonment and forfeiture of the right.

11. INJUNCTION ☜163(3)—PENDENTE LITE—IRREPARABLE INJURY.

Where injury to defendant railroad from continuance of writ of injunction pendente lite, ‚forbidding interference with complainant's telegraph line on railroad right of way, is not either serious or extensive, and the injury that may result to complainant from dissolution is vital, and perhaps irreparable, injunction will be continued.

Appeal from Circuit Court, Montgomery County; Gaston Gunter, Judge.

Bill by the Western Union Telegraph Company against the Louisville & Nashville Railroad Company. From decree rendered, complainant appeals. Affirmed in part, and reversed and rendered in part.

This is a bill filed by the Western Union Telegraph Company to enjoin the Louisville & Nashville Railroad Company from cutting down, confiscating, or otherwise destroying an important line of interstate and intrastate telegraph from a point on the Louisville & Nashville Railroad where it crosses the Tennessee state line, along the main line of the Louisville & Nashville Railroad Company to the Mississippi state line. The bill alleges in detail the character of the business in which the appellant is engaged, and the great importance of its business to private parties, to the public generally, and to the United States government, in the transmission of telegrams both within the state of Alabama and across the continent.

The line of telegraph between the Tennessee state line and the city of Montgomery is on the east side of the railroad, and was constructed by the Western Union Telegraph Company many years ago, under a contract with the then owners of the railroad. This contract has now expired, and the efforts of the Western Union to condemn an easement for the line where it now is have, after considerable litigation in the courts, been denied. The line south of Montgomery runs along the east side of the railroad to a point called Hurricane, 16 miles north of Mobile, at which point it crosses over to the west side, and at Mobile it again crosses back to the east side and remains on the east side to the Mississippi state line. Appellant claims to be the owner of a perpetual easement along the appellee's railroad all the way from Tennessee to Mississippi, originally acquired under condemnation proceedings by its predecessors, namely, American Union Telegraph Company, the Atlantic & Pacific Telegraph Company, and the Southern & Atlantic Telegraph Company.

On April 20, 1880, the American Union Telegraph Company, in accordance with the statutes of Alabama, then existing, filed a petition in the probate court of Montgomery county to condemn an easement in, over, or upon the right of way of the Mobile & Montgomery Railway Company from the city of Montgomery, in Montgomery county, to the city of Mobile. The probate court of Montgomery county took jurisdiction of the proceedings, and, after a full hearing therein, entered up an order on May 1, 1880, condemning to the use of said American Union Telegraph Company an easement over said railway's right of way, upon payment of the compensation assessed by the jury, namely, $50, and recited in the decree that said sum had been paid into court. Immediately after this condemnation, the American Union Telegraph Company erected a line of telegraph poles and wires on the left or east side of the railway from the city of Montgomery to a place called Hurricane, and on the west side of said railroad from Hurricane to the city of Mobile. On January 19, 1881, the American Union Telegraph Company sold its lines to the Western Union Telegraph Company, and since said time the Western Union has been in the possession of said telegraph line, operating the same, and still operates it until this day.

On April 17, 1877, the Atlantic & Pacific Telegraph Company filed a petition in the probate court of Montgomery county to condemn a right of way for a telegraph line over and along the west side of the rights of way of the South & North Alabama Railroad Company between the city of Montgomery and through the counties of Montgomery, Elmore, Chilton, Shelby, Jefferson, Blount, Cullman, and Morgan, to the city of Decatur. The proceedings in the probate court of Montgomery county were, on May 1, 1877, on the petition of said South & North Alabama Railroad Company, removed to the United States Circuit Court at Montgomery, and thereafter,

on June 4, 1877, the issues between the parties were duly determined in said United States Circuit Court and an order made therein ascertaining the damages and compensation which the South & North Alabama Railroad Company was entitled to receive to be the sum of $1—the decree of the court reciting that said sum of $1, together with the costs in the case, had been paid into court, and adjudged and decreed that the Atlantic & Pacific Telegraph Company should have and enjoy the right to construct its telegraph lines along the western side of the railroad from Montgomery to Decatur, in such manner as not to obstruct or hinder the usual travel on said railroad or interfere with its enjoyment of its right of way.

On May 3, 1877, the Atlantic & Pacific Telegraph Company also filed in the probate court of Limestone county, Ala., a petition to condemn a right of way for a telegraph line over and along the west side of the rights of way of the Nashville & Decatur Railroad Company from the Tennessee state line, through the county of Limestone, to the junction thereof with the Memphis & Charleston Railroad, in the southern portion of Limestone county, near to and north of the Tennessee river. It was alleged in the petition that said line of railway of the Nashville & Decatur Railway Company had been leased by said company to the Louisville & Nashvile Railroad Company and the Louisville & Nashville & Great Southern Railroad Company for a term of 30 years, and the said Louisville & Nashville Railroad Company and the Louisville & Nashville & Great Southern Railroad Company, and some of the owners of the fee in the lands over which the railroad was located, were made defendants in the petition. The probate court of Limestone county took jurisdiction of said proceedings, and on June 11, 1877, a decree was entered up, assessing the damages at one cent, and reciting that the damages had been paid, and decreeing that the said Atlantic & Pacific Telegraph Company have and possess the use and easements in the property described in the petition as therein prayed for.

On January 19, 1881, the Atlantic & Pacific Telegraph Company sold and conveyed to the Western Union Telegraph Company all of its lines of telegraph, together with all of its other properties, including the rights of way so condemned along the western side of the South & North Alabama Railroad Company between Montgomery and Decatur, and along the western side of the Nashville & Decatur Railroad Company from the Tennessee river through Limestone county, to the Tennessee state line. The Atlantic & Pacific Telegraph Company did not build any lines over the right of way so condemned by it, and the Western Union Telegraph Company at the time it bought the rights of way from the Atlantic & Pacific Telegraph Company already had the line of telegraph wires and poles on the east side of the railroad from Montgomery to the Tennessee state line, being the same line now operated by it.

The line between Montgomery and Decatur, on the east side of the South & North Alabama Railroad Company, was erected under a contract between the Western Union Telegraph Company and said South & North Alabama Railroad Company, dated June 19, 1872, a copy of which is attached to the bill as Exhibit F. At the time the Western Union Telegraph Company acquired the rights of way on the west side of the Nashville & Decatur Railroad Company through Limestone county from the Atlantic & Pacific Telegraph Company it had its present line on the east side of said railroad which had been erected "under some agreement or contract with said company or with the Louisville & Nashville Railroad Company of similar import to the contract between it and the South & North Alabama Railroad Company."

On August 18, 1874, the Southern & Atlantic Telegraph Company filed in the probate court of Mobile county a petition, praying for a condemnation to its use of a right of way between the city of Mobile and the Mississippi state line, along and over the right of way of the New Orleans, Mobile & Texas Railroad Company. The New Orleans, Mobile & Texas Railroad Company was made a party to the proceedings, and on September 4, 1874, an order or decree was entered up, granting the petition and condemning an easement to the use of the said the Southern & Atlantic Telegraph Company over the said line of railway between Mobile and the Mississippi state line, the bridges and trestles, and so on—the decree of the court being affirmed by this court in the case of N. O., M. & T. R. R. Co. v. Southern & Atlantic Telegraph Co., 53 Ala. 211. Said the Southern & Atlantic Telegraph Company constructed a line on said right of way so condemned, and on July 10, 1876, leased said line to the Western Union Telegraph Company, and the appellant, as lessee of said the Southern & Atlantic Telegraph Company, has since that time and now is in possession of said telegraph line, and as such lessee has the right to occupy the same at the present time and for a long term of years in the future, to wit, 20 years from this date.

The bill further shows that during the year 1898, the appellee, Louisville & Nashville Railroad Company, purchased the line of railroad between Mobile & Montgomery, formerly owned by the Mobile & Montgomery Railway Company; that prior to the year 1880 it leased the line of railroad between Mobile and New Orleans from the N. O., M. & T. Railroad Company, and since that time had become the owner of the same, including that part between the city of Mobile and the Mississippi state line; that in 1914 it also purchased from the South & North Alabama

Railroad Company its line of railroad between Montgomery and Decatur, and is now in possession of and operating the same; and that said Louisville & Nashville Railroad Company is and has for a great number of years been in the absolute control and possession of the line of railroad from the Tennessee river to the Tennessee state line, through Limestone county.

The bill further shows that the appellant has been in possession of the telegraph line between Montgomery and Mobile, as owner, and daily operating the same—it having purchased the same from the American Union Telegraph Company in 1881; and that as lessee of the said the Southern & Atlantic Telegraph Company it has been in possession of the line and daily operating the same between the city of Montgomery and the Mississippi state line; but that, notwithstanding its peaceful possession of said line from Montgomery to the Mississippi state line, the Louisville & Nashville Railroad Company denies or disputes its title, and claims some right, title, or interest in or incumbrance upon the rights of way so occupied by appellant. The bill alleges that no suit is pending to enforce or test the validity of such title, and calls upon the railroad company to set forth and specify its title, claim, interest, or incumbrance, and how and by what instrument the same is derived and created.

The bill further sets up that neither the Atlantic & Pacific Telegraph Company, nor appellant as its vendee, has ever abandoned the rights of way condemned by the said the Atlantic & Pacific Telegraph Company between Montgomery and Decatur and between Decatur and the Tennessee state line, but avers and shows that there had been no occasion for occupying the same, since appellant had a line on the east side of the railroad between said points. The bill sets up further:

"That under the statute of the state of Alabama under which the condemnation proceedings were had, no provision was made for any writ of assistance to enable the condemning party to get possession of the property so condemned, nor is there now any law in existence by which any court can place appellant in possession of said rights of way. * * * Wherefore, it is necessary that a court of equity should issue a writ of assistance or other appropriate writ to enable your orator to get possession of said rights of way between said points."

The bill then alleges that on June 18, 1884, the Louisville & Nashville Railroad Company owned, operated, and controlled a large system of railroads throughout many states in the South, and was lessee or otherwise in possession of the railroad between the Tennessee state line and the Mississippi state line, formerly owned by the Nashville & Decatur Railroad Company, the South & North Alabama Railroad Company, the Mobile & Montgomery Railway Company, and the N. O., M. & T. Railroad Company; that on said day the Western Union Telegraph Company and the Louisville & Nashville Railroad Company entered into a contract, a copy of which is attached as Exhibit E to the original bill. It is averred in the bill, upon information and belief, that the Louisville & Nashville Railroad Company claims that by virtue of the expiration of said contract of June 18, 1884, all interests in any rights of way along any of its lines occupied by appellant ceased and determined, and it now had the right to take possession of and occupy the rights of way occupied by appellant, and purchased by it from the companies who originally condemned the same in the courts; that it had notified appellant to vacate all of its rights of way and remove therefrom all and singular the poles, cross-arms, wires, batteries, instruments, appliances, and fixtures; and that it had also notified appellant that unless it vacated its said rights of way and premises and removed therefrom its poles, wires, cross-arms, instruments, and other fixtures, it would take possession of and appropriate and use all and singular said poles, cross-arms, wires, batteries, instruments, and other fixtures, and hold, use, operate, maintain, or otherwise dispose of the same as its own property, and would refuse to permit appellant to remove or use the same in any manner or for any purpose, threatening that it would use all legitimate means in its power to prevent appellant from interfering with its (appellee's) possession, use, and ownership thereof.

After setting up the great and irreparable injury that would accrue to appellant and the public generally by any such action on the part of the railroad company, the bill alleges that appellant is advised and believes, and upon such information and belief avers and states, that it did not by reason of the execution of said contract of June 18, 1884, surrender or in any way incumber or jeopardize its ownership in the rights of way for a telegraph line on the main line of the railroad in the state of Alabama, between Tennessee and Mississippi, but that said contract of June 18, 1884, was merely a working agreement between the parties, in so far as it affects appellant's lines involved in these proceedings, and that the railroad's claim that it now owns said lines of telegraph or that it has any right to interfere with appellant's use of the same is unfounded, and arises out of its mistaken interpretation of the effect of said contract of June 18, 1884. It is also set out in the bill that, as soon as the court, "by proper writ of assistance or other writ," shall put appellant in possession of its rights of way on the west side of the railroad between Montgomery and the Tennessee state line, it could easily, and without interruption to the public business, shift the lines of poles and wires it now has on the east side to the right of way owned by it on the west side;

that said lines on the east side in no way interfere with the railroad in the operation of its road; that appellant's "franchise to operate said telegraph line is a valuable franchise to it and one useful to the public, and its rights to use and enjoy the same and perform its duties to the public are such as will be protected by a court of equity."

Rushton, Williams & Crenshaw, of Montgomery, and Forney Johnston, of Birmingham, for appellant.

Henry L. Stone, of Louisville, Ky., and Jones, Thomas & Field and Goodwyn & McIntyre, all of Montgomery, for appellee.

SOMERVILLE, J.   Complainant files its bill of complaint: (1) To quiet its alleged title to a right of way for its telegraph line continuously along defendant's railroad right of way from the Tennessee line through Decatur, Montgomery, and Mobile to the Mississippi line; (2) for a writ of assistance or other proper writ to put complainant in possession of its alleged right of way on the west side of said railroad line between Montgomery and Decatur, and on the east side thereof between Hurricane and Mobile, and on the west side thereof between Decatur and the Tennessee line; (3) for a writ of injunction pendente lite restraining defendant from interfering with or taking possession of the telegraph lines at present operated by complainant on the east side of the railroad between Decatur and Montgomery, and on the west side between Hurricane and Mobile, and on the east side between the Tennessee river and the Tennessee line, until complainant has been put in possession of its alleged right of way on the opposite sides of said railroad, and has been given an opportunity to shift its poles and wires to its said right of way from their present positions; and (4) for a writ of injunction, temporary and perpetual, restraining defendant from in any way interfering with complainant's use of its alleged right of way now occupied between Hurricane and Montgomery, and between Mobile and the Mississippi line.

To epitomize the case made by the bill: Complainant is operating a continuous telegraph line along defendant's said railroad line from Tennessee to Mississippi; complainant's several predecessors acquired a continuous right of way for a telegraph line along this railroad, which complainant acquired from them by purchase and conveyance or lease; complaint, under these titles, peacefully occupies and uses this right of way between Montgomery and Mobile (except a short distance between Hurricane and Mobile, where its line is on the opposite side), and between Mobile and Mississippi; neither it nor any predecessor has ever occupied or used its right of way on the left side between Montgomery and Tennessee, for the reason

that complainant already occupied and used a right of way on the east side under a contract with defendant, made June 18, 1884, and which expired before this suit was filed; complainant has never abandoned any part of its right of way as acquired by condemnation, and did not by its acceptance of a grant from defendant in June, 1884, nor by a previous grant in May, 1880, under which it operated its entire line, estop itself from asserting its true title and rights upon the expiration of those agreements, as against its grantor, the defendant railroad company.

The allegations and prayers of the bill of complaint required that it be considered in two distinct aspects: (1) As a statutory bill to quiet title to complainant's alleged right of way; and (2) as a bill to protect complainant against any interference by defendant with its possession and use of said right of way.

[1] 1. As a statutory bill to quiet title, defendant contends that it is fatally defective in that it fails to show such actual or constructive possession in complainant as is necessary to support the bill, although, with respect to that part of the line now in use between Montgomery and Mobile, it is alleged that complainant is in peaceable possession and enjoyment under its alleged right acquired by condemnation by its predecessor, the American Union Telegraph Company. Exhibit E to the bill shows a contract between complainant and defendant, made in June, 1884, by which "the railroad company, so far as it legally may, hereby grants and agrees to assure to the telegraph company the exclusive right of way" over all of the railroad company's roadways; and the prefatory recital is:

"Whereas, the operation of the telegraph company's lines along the various railroads owned, controlled, or operated by the railroad company has been conducted under the provisions of an agreement between the parties hereto, dated May 14, 1880, which agreement provides that it may be terminated after 1st July, 1885."

This contract covered, by specific reference, the Mobile & Montgomery Railway, then leased by defendant, and also the rest of the railroad lines here concerned.

The bill shows that the American Union Telegraph Company secured an order of condemnation for its right of way over the Mobile & Montgomery Railway on May 1, 1880, and alleges "that said A. U. Telegraph Company entered upon the right of way of the said M. & M. Railway Company and erected a line of telegraph poles and wires on the left or east side thereof"; that on January 19, 1881, the said telegraph company sold and conveyed to complainant all of its telegraph lines, including this right of way; and that since said time complainant has been, and is now, in the possession and enjoyment of

said easement. The bill further shows that defendant leased the Mobile & Montgomery Railway prior to 1880, and purchased it in 1898.

Defendant's theory is, that the contract of June, 1884, established between the parties the relationship—the quasi relationship at least—of landlord and tenant, in such sense as to estop complainant from thereafter denying the superior right and title of defendant in and to the right of way·thus acquired by complainant. We think this contention is sound, and that the doctrine of estoppel applicable to ordinary tenants is applicable here, whether complainant was in possession of its alleged right of way under claim of right at the time of defendant's grant in 1884, or whether it then and therefore acquired such possession.

The law governing cases like this was discussed and stated in the case of Blankenship v. Blackwell, 124 Ala. 355, 362, 27 South. 551, 553 (82 Am. St. Rep. 175). Said the court:

"There can be no serious doubt of the correctness of the following propositions: (1) The acceptance of a lease by one in possession works no estoppel in any case where such acceptance was induced by fraud, mistake, * * * duress, or other improper means by the lessor; and that (2) in the absence of fraud, mistake, misapprehension, duress, or other improper means upon the part of the lessor, the acceptance of such a lease by one in possession works no estoppel after the term has expired."

See, also, Crim v. Nelms, 78 Ala. 607; Farris v. Houston, 74 Ala. 167; Camp v. Camp, 5 Conn. 291, 13 Am. Dec. 60; Taylor on Land. & Ten. § 707.

In Farris v. Houston, supra, Brickell, C. J., observes:

"There are various exceptions ·to and qualifications of the rule, which are of as much importance as the rule itself, and which must be observed in the administration of justice between landlord and tenant. A plain mistake of facts constitutes one of the exceptions. The tenant may show that he attorned to the landlord, ·or accepted a lease from him, under mistake, and in ignorance of the true state of the title, and that the title was in himself, or out of the lessor."

The specific question here presented is fully discussed by Judge Freeman in his note to Camp v. Camp, 13 Am. Dec. 60, 68. He says:

"There is some conflict in the decisions upon the point as to whether, when one who is already in possession of land accepts a lease thereof from a claimant of the same 'from whom he did not receive possession, he is or is not estopped from denying the title of such claimant; and whether, if he is estopped, such estoppel endures *after the expiration of his term* [italics ours]. * * * Ordinarily the estoppel of the tenant to deny the landlord's title continues as 'long as he remains in possession, even after the term, if there is no disclaimer or attornment to another. * * * It was held, however, in a recent English case that this doctrine did not apply where one in possession under a good title became tenant and paid rent to another, but that the tenant in such case was not estopped to deny the lessor's title after the term. Acc. Death Ins. Co. v. Mackenzie, 10 Com. Bench, N. S. 870. And it would certainly seem at first view to be reasonable that where the tenant has not derived his possession from the lessor, but, being in possession already, has accepted the protection of a lease during a .definite term, he should be estopped only during the continuance of the contract, for as he was in possession before the lease his remaining in possession afterwards cannot be said to flow from the lease. But if, as suggested above, the acceptance of the lease is an abandonment of the original possession, and if fresh possession is to be regarded as having been taken under the lease, all the consequences would ensue which would have followed if the lessee had been actually out of possession at the time of the lease. * * * It is probably the safer, better, and more consistent doctrine that the acceptance of a lease fairly and understandingly should have the same effect in all cases whether the lessee is in or out of possession at the time. The protection furnished to the tenant in cases of fraud, imposition, mistake, or undue advantage seems to be sufficient for all practical purposes. If one in possession will freely, and with a full knowledge of his rights,· become tenant to a stranger, he ought to abide by the consequences of his folly."

We approve of this statement of the law.·

The bill contains no allegation of fraud, mistake, duress, or undue advantage to avoid the estoppel, and hence complainant cannot in any way contest defendant's superior title to the right of way in question until it has first surrendered its own possession.

We of course do not overlook the earnest insistence of complainant's counsel that the contract of June, 1884, is not a lease, but a mere "working agreement" for the operation of complainant's telegraph lines. But our view of the matter is that it is immaterial what the contract may be called. It is the grant of a right of way to complainant for a specified term of years, and by necessary implication it imposes upon complainant the obligation to surrender the way granted to it, upon the expiration of the term specified. In this sense the contract, although it contains also mutual covenants and working agreements, is, to all intents and purposes, a lease, and must be governed by the rules of law that govern leases, so far, at least, as the principle of estoppel is concerned.

With respect to that section of the right of way between Mobile and Mississippi, the same conditions prevail, and, upon the considerations above stated, the same law of estoppel must be applied.

Our conclusion therefore is that, with respect to all that part of complainant's alleged

right of way, now in operation, between Montgomery and Mississippi, except the short section between Hurricane and Mobile, complainant is, upon the face of the bill, estopped to maintain this suit, whether as a bill to quiet title, or as a bill to protect an easement; and the demurrer so limited was properly sustained.

[2] With respect to that part of complainant's alleged right of way between Montgomery and Tennessee, the bill does not allege any such peaceable possession as is necessary to maintain a statutory bill to quiet title: indeed, the implications of the bill are that complainant is being excluded therefrom under the hostile claims of defendant. Hence the demurrers limited to this part of the bill, as a bill to quiet title, were properly sustained.

[3] If, however, the bill shows that complainant, through its predecessors in title, acquired and still owns a right of way of the west side of defendant's railroad between Montgomery and Tennessee, there is unquestionably equity in the bill in so far as it seeks equitable relief against any interference by defendant, with complainant's proposed use of that portion of its right of way. City of Demopolis v. Webb, 87 Ala. 659, 666, 6 South. 408; Cabbell v. Williams, 127 Ala. 320, 28 South. 405; Webb v. Robbins, 77 Ala. 176.

We need not discuss the special prayer of the bill, for it contains prayers broad enough to invoke injunctive relief if so entitled.

Defendant, by appropriate grounds of demurrer, contends that the bill does not show that complainant ever acquired a valid right of way on this section of its railroad, because: (1) It does not appear that the courts that rendered the alleged judgments of condemnation had jurisdiction thereto. (2) It appears that the alleged judgments are void for uncertainty of description of the property condemned. (3) It does not appear that either of complainant's predecessors in title were authorized to do business in Alabama when they respectively leased and conveyed their rights by condemnation to complainant. (4) It appears that complainant's lease from the Southern & Atlantic Telegraph Company was executed on July 10, 1876, for a period of more than 20 years, and, 20 years having elapsed, the lease is void as to the excess under the statute then in force, and cannot be now asserted. (5) It appears that complainant's deed from the Atlantic & Pacific Telegraph Company, and its lease from the Southern & Atlantic Telegraph Company, are void under section 11, art. 14, of the Alabama ern & Atlantic Telegraph Company, are void Constitution of 1875 (section 239, Const. 1901).

Another ground of demurrer is (6) that whatever rights may have been acquired by condemnation as alleged, it nevertheless appears from the bill that such rights were abandoned by complainant long before this suit was filed.

We notice these contentions in the order stated:

[4] 1. The bill and exhibits sufficiently show valid judgments of condemnation founded upon jurisdiction of parties and subject-matter.

[5] 2. Conceding, without deciding, that the several defendants in the condemnation proceedings exhibited by the bill might have objected to the petitions therein because of their failure to locate more definitely on the railroad ways the line of its posts and wires to be installed, we think the defect was waived by failure to object on that ground, and that on collateral attack the judgment is clearly valid. "Where a right of way is granted or reserved, but not specifically defined, the rule is that the way need be only such as is reasonably necessary and convenient for the purpose for which it was created. When the right of way is not bounded in the grant or reservation, the law bounds it by the line of reasonable enjoyment." 14 Cyc. 1161, b, 1203, B; Long v. Gill, 80 Ala. 408. The same rule must govern a condemned right of way, which is strictly analogous to a grant.

[6, 7] 3. It will be presumed that a foreign corporation doing business in this state has complied with its laws. Nelms v. E. A. L. M. Co., 92 Ala. 157, 9 South. 141. The bill here shows nothing to the contrary. Moreover, the deeds and leases made to complainant by the several condemnor corporations are executed transactions, and not subject to repudiation on this ground, even as between the parties. 3 Michie's Dig. 622, § 354. Certainly strangers cannot raise the question in any case.

[8] 4. If the leases made to complainant were void as to any excess of their terms over 20 years under the statutory limitation then in force (Code 1876, § 2190), that invalidity can be asserted only by parties and privies. Strangers to the lease have no right to do so.

[9] 5. The constitutional provision (now section 239, Const. 1901) here invoked by defendant is as follows:

"No telegraph company shall consolidate with * * * or hold a controlling interest in the stock or bonds of any other telegraph company owning a complete line, or acquire, by purchase or otherwise, any other competing line."

It is perhaps sufficient to say that the bill of complaint does not show that, at the time of its said leases and purchases of these rights of way, complainant and its grantors were competing lines, for very clearly and unused and unlocated easement is not a telegraph line within the meaning of the constitutional provision quoted. Mannington v. Hocking Valley R. Co. (C. C.) 183 Fed. 133, 150.

[10] 6. Mere nonuser of a right of way or other easement, acquired by grant or condemnation, however long-continued, will not

of itself work an abandonment and forfeiture of the right. Such nonuser must be accompanied by an intention to abandon, and this intention must be clearly deducible from the declarations or conduct of the claimant, or from the facts and circumstances incidental to his nonuser. 14 Cyc. 1187, c; Stein v. Dahm, 96 Ala. 481, 11 South. 597; T. & C. R. R. Co. v. Taylor, 102 Ala. 224, 14 South. 379. The question is one of fact, and there is nothing in the bill of complaint from which, on demurrer, a court can pronounce its conclusion as a matter of law.

The special grounds of demurrer above discussed are without merit.

[11] It remains to consider the action of the trial court in dissolving the temporary writ of injunction, in so far as it forbids defendant from interfering with complainant's telegraph lines between Montgomery and Decatur, and between the Tennessee river and the Tennessee state line, and between Hurricane and Mobile, until complainant can take possession of its alleged right of way on the opposite side of the railroad, and remove its present poles and wires thereto from the other side of the railroad.

We have examined all the facts presented by the sworn answer of defendant. They are too voluminous for detailed discussion in an opinion already much protracted. The circumstances of the case are unusual, and the operation of an important public service is involved. The injury to defendant that may result from the continuance of the writ of injunction in force pendente lite is not, it seems to us, either serious or extensive. On the other hand, the injury to complainant that may result from its dissolution is vital and perhaps irreparable.

We think the circumstances of the case, and the situation of the respective parties, require the retention of the writ of injunction in so far as it applies to the sections of telegraph lines above noted, and it will be so ordered and decreed. As to all other sections of the telegraph lines, the decree dissolving the temporary injunction will be affirmed.

To summarize: When amended in accordance with our rulings above set forth, complainant may maintain this bill of complaint as a bill to protect its use and enjoyment of its right of way between Montgomery and the Tennessee line, and between Hurricane and Mobile, with the injunction pendente lite retained as above stated. It cannot maintain the bill for any purpose with respect to other sections of its right of way occupied under the contract of June 19, 1884; as to which there must be a complete surrender of possession to defendant as a prerequisite to any suit questioning defendant's superior title and claim thereto.

Affirmed in part, reversed and rendered in part, and remanded.

All the Justices concur.

## On Rehearing.

SOMERVILLE, J. Our attention is called to the fact that, by an amendment to the original bill, the full effect of which was overlooked, complainant has placed its entire telegraph line between Montgomery and the Mississippi state boundary in the same condition with respect to its ownership and use, and status under the lease contract with respondent, with the result that the exceptional treatment accorded in the opinion and decree to the short section between Hurricane and Mobile was erroneous, and must be corrected in accordance with the present state of the pleadings.

Complainant must, therefore, as a condition to relief, surrender the entire line south of Montgomery, and is not entitled to injunctive relief as to any portion thereof, which includes the Hurricane-Mobile section.

The decree will be corrected in accordance therewith.