## STATE v. WESTERN UNION TELEGRAPH CO. (3 Div. 571.)

(Supreme Court of Alabama. Oct. 12, 1922.)

**1. Public service commissions ⬤⟿21—When order of public service commission subject to review stated.**

An order of the Alabama Public Service Corporation is subject to review by appropriate action if it has exceeded its jurisdiction, or the statute under which it has proceeded is unconstitutional, or if the order clearly appears to be unreasonable or unjust.

**2. Corporations ⬤⟿382½—Public service corporation may not without consent of state by voluntary act disable itself from performing functions.**

A public service corporation organized to do a business affected with a public interest, and having held itself out to the public as being willing, able, and equipped to serve all members of the public on proper and reasonable terms, may not without the consent of the state by its voluntary act deprive itself of its franchise and facility, disabling it in performing the functions which was the condition for the public grant, but such rule is not applicable to involuntary transfers not produced by or which could not have been prevented by the corporation.

**3. Evidence ⬤⟿20(2)—Judicial notice taken of development and activity of telegraph companies following certain legislation.**

The court takes judicial notice of the time of the extended development and activity following the enactment of statutes encouraging the construction and operation of telegraph lines in the acquiring of such rights of way or franchises, and of the building of telegraph lines in the state.

**4. Telegraphs and telephones ⬤⟿11 — Telegraph company cannot be compelled to remain on railroad right of way after termination of easement.**

Where a telegraph company has elected to terminate its contract for the maintenance of lines along a railroad company's right of way, and has initiated fruitless proceedings for condemnation under Code 1907, § 3867, that it might serve the public commercially at certain points, it cannot by statute or order of the state public service commission, or by judgment of the Supreme Court be compelled to remain on the railroad right of way as a trespasser thereon, its visible properties thereon having been disposed of pursuant to law.

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Telegraphs and telephones ⬦⮞28—Discontinuance of service by telegraph company held involuntary so as not to require consent of state.**

Where a telegraph company served certain cities commercially by operation of its lines along a railroad right of way under contract with the railroad company, and after the contract was canceled instituted unsuccessful condemnation proceedings under Code 1907, § 3867, and thereafter discontinued service along such lines, the act was an involuntary discontinuance of the service within the exception to the general rule forbidding discontinuance of service by the public service corporation without the consent of the state.

**6. Telegraphs and telephones ⬦⮞28 — Telegraph company held not under duty to acquire new easements for lines to furnish commercial service after termination of contract for easement over railroad right of way.**

Where a telegraph company operating its lines along the right of way of a railroad company under contract to furnish commercial service to certain towns and villages, canceled its contract and instituted unsuccessful condemnation proceedings under Code 1907, § 3867, and was thereby compelled involuntarily to discontinue its service to such points, that the railroad company which had purchased the physical properties and materials of the telegraph company along its lines could not be required to furnish commercial telegraphic service to such points, did not cast upon the telegraph company the duty to build new lines over new easements, to give public commercial service to such points, notwithstanding that the railroad company offered to rent it pole space on certain conditions, and notwithstanding that the sale to the railroad company was without the consent of the Public Service Commission.

**7. Telegraphs and telephones ⬦⮞26½—Order requiring telegraph company to furnish telegraphic service held unreasonable and void.**

Where a telegraph company had involuntarily discontinued commercial service to certain towns and villages after cancellation of contracts with a railroad company for running its lines over the railroad right of way, an order of the Public Service Commission under authority conferred by Code 1907, § 5651, requiring the telegraph company to give commercial service to such localities, was unreasonable, unjust, and void as placing upon the telegraph company an unreasonable burden in attempting to compel it to acquire new easements and to build new lines, and no penalties could be recovered by the state for discontinuance of such service; the telegraph company having no easement or physical properties with which to accord the service so required.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

The State of Alabama sues the Western Union Telegraph Company to recover statutory penalties for failure of the telegraph company to comply with an order of the Alabama Public Service Commission directing continuation of telegraphic service to certain towns in the state of Alabama. From a judgment for defendant, plaintiff appeals. Affirmed.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The order of the commission for a continuance of the service is the equivalent of a finding that the service is necessary; and it cannot be contended that compliance is impossible where the law enables the acquisition of lands by condemnation. 185 Ala. 354, 64 South. 13, L. R. A. 1915D, 98; 8 Cyc. 974; 27 Am. & Eng. Ency. of Law (2d Ed.) 1018; 22 R. C. L. 830. Where lines have once become established, they cannot be abandoned without the consent of the state. 22 R. C. L. 85, 155, 750; 244 Fed. 650, 157 C. C. A. 98; 215 Fed. 307, 131 C. C. A. 581, L. R. A. 1915A, 549; 33 Cyc. 135; 86 Miss. 172, 38 South. 732, 122 Am. St. Rep. 277; 90 Minn. 277, 96 N. W. 81; 96 Kan. 298, 150 Pac. 544. Where a party to a contract makes further performance by him impossible, the other party is discharged, and may at once sue for the breach. 9 Cyc. 939. Defendant having voluntarily canceled its contract and put itself in a position where it could not continue service, it is estopped to contend that it cannot be required to make other provisions. 16 Cyc. 785. A public service corporation cannot dispose of its property and franchises without consent of the state, and thereby exempt itself from the performance of public duties in connection therewith. 10 Cyc. 1090; 162 Ala. 635, 50 South. 157; 67 Tex. 692, 4 South. 156; 53 Conn. 333, 5 Atl. 695.

Francis R. Stark, of New York City, and Rushton & Crenshaw, of Montgomery, for appellee.

An order of a Public Service Commission is subject to review in an action to collect statutory penalties and in mandamus proceedings to enforce the order. 182 Ala. 357, 62 South. 749; 235 U. S. 651, 35 Sup. Ct. 214, 59 L. Ed. 411; 58 Fla. 524, 50 South. 425; 80 Minn. 191, 83 N. W. 60, 89 Am. St. Rep. 514. A public service corporation cannot be compelled to continue to operate a utility after its contract with a municipality has expired. 101 Kan. 774, 169 Pac. 205, L. R. A. 1918B, 310. The authority of the state for the transfer of corporate franchises or property may be implied from the public policy of the state. 163 U. S. 564. The Public Service Commission has no power to compel one to be a trespasser; only the valid orders of such commission will be enforced by the courts. 200 Ala. 536, 76 South. 862, L. R. A. 1918C, 293; 222 U. S. 541, 32 Sup. Ct. 108, 56 L. Ed. 308; 227 U. S. 88, 33 Sup. Ct. 185, 57 L. Ed. 431; 242 U. S. 148, 37 Sup. Ct. 43, 61 L. Ed.

⬦⮞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

211; 203 U. S. 335, 27 Sup. Ct. 90, 51 L. Ed. 209.

THOMAS, J. The suit was for recovery of statutory penalties for discontinuance of commercial services to certain towns and villages in this state.

The issues are framed by counts 1 to 4, inclusive, defendant's pleas, and the general replication. The submission was upon the pleadings, agreed statement of facts, and oral testimony. There was judgment for the defendant, and the state appeals.

[1] An order of the Alabama Public Service Commission is subject to review by an appropriate action if it has exceeded its jurisdiction, or the statute under which it has proceeded is unconstitutional, or if the order clearly appears to be unreasonable and unjust. R. R. Com. v. Ala. Nor. Ry., 182 Ala. 357, 368, 62 South. 749; R. R. Com. v. St. L., etc., Co., 195 Ala. 527, 529, 70 South. 645; Wadley South. Ry. v. Georgia, 235 U. S. 651, 35 Sup. Ct. 214, 59 L. Ed. 405, 411.

The statute charges the Railroad Commission (the name being later changed to Alabama Public Service Commission) with the duty of supervising, regulating, and controlling transportation companies in matters relating to the performance of public duties, charges therefor, and abuses thereof, and provides that "the * * * Commission * * * shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just." Code, 1907, § 5651; Ala. Public Service Com. v. L. & N., 206 Ala. 326, 89 South. 524. This jurisdiction was later extended to and over telephone and telegraph companies. Acts 1915, pp. 567, 865; Birmingham v. Sou. Bell T. & T. Co., 203 Ala. 251, 82 South. 519.

[2] The real questions are whether error was committed in rendition of judgment for defendant in the suit for statutory penalties and in dismissing the petition for mandamus. It is established by the decisions that a public service corporation, organized to do a business affected with a public interest, and having held itself out to the public as being willing, able, and equipped to serve all members of the public on proper and reasonable terms and conditions (B. R. L. & P. Co. v. Littleton, 201 Ala. 141, 145, 77 South. 565) may not, without the consent of the state, by its voluntary act, deprive itself of its franchise and facility, disabling it in performing the function which was the condition for the public grant. Nor. Ala. Ry. v. Guttery, 189 Ala. 604, 66 South. 580; American Lumber Co. v. Tombigbee, etc., Co., 154 Ala. 385, 45 South. 911; Ricketts v. Birmingham, etc., Co., 85 Ala. 600, 5 South. 353. Such corporations may not, without the consent of the state, abrogate the performance of their duties to the public, imposed by their charters as the consideration for the grant of their franchises. Union Pacific v. Chicago, etc., Co., 163 U. S. 564, 16 Sup. Ct. 1173, 41 L. Ed. 265; Cent. Transp. Co. v. Pullman, etc., Co., 139 U. S. 24, 48, 11 Sup. Ct. 478, 35 L. Ed. 55; Thomas v. West Jersey Ry., 101 U. S. 71, 25 L. Ed. 950, 953; Black v. Delaware, etc., Co., 22 N. J. Eq. 130, 399; Beman v. Rufford, 1 Sim. (N. S.) 550; Winch v. R. R. Co., 13 L. & Eq. 506. See 2 Bl. Comm. star p. 37; 3 Kent, Comm. star p. 458.

This rule can only apply to voluntary transfers of corporate franchises and properties and not to involuntary transfers not produced by or which could not have been prevented by the corporation. Cent. Transp. Co. v. Pullman, etc., Co., supra; Indianapolis v. Consumers' etc., Co., 144 Fed. 640, 644, 75 C. C. A. 442. The reasonable interpretation of the rule of jus disponendi was applied in Thomas v. West Jersey Ry., supra (lease of whole road for 20 years); Penna. R. Co. v. St. Louis, etc., Co., 118 U. S. 290, 6 Sup. Ct. 1094, 30 L. Ed. 83 (lease for 99 years); Oregon Ry. & Nav. Co. v. Oregon Ry. Co., 130 U. S. 1, 9 Sup. Ct. 409, 32 L. Ed. 837 (96-year lease); Cent. Transp. Co. v. Pullman, etc., Co., supra (99-year lease); St. Louis, etc., Co. v. T. H. & I., 145 U. S. 393, 12 Sup. Ct. 953, 36 L. Ed. 748 (lease 993 years); U. S. v. Union Pacific, 160 U. S. 1, 16 Sup. Ct. 190, 40 L. Ed. 319 (contract to exclude other telegraph companies from railroad right of way); Union Pacific v. C., R. I. & P., 163 U. S. 564, 16 Sup. Ct. 1173, 41 L. Ed. 265 (contract for trackage for 999 years over another line of railway on a mileage or wheelage basis, from Council Bluffs to Omaha). Earlier cases applying the rule are York & Maryland Co. v. Winans, 58 U. S. (17 How.) 31, 39, 15 L. Ed. 27, 30; Pearce v. Madison, etc., Co., 62 U. S. (21 How.) 441, 16 L. Ed. 184.

There is no statute authorizing the withdrawal of service without consent of the commission at the points indicated. Has, then, the state impliedly consented to that withdrawal, or has that service been involuntarily withdrawn by the Western Union Telegraph Company so as not to subject it to the penalties provided by statute? It must be conceded that the record shows no element of a voluntary withdrawal by the telegraph company from the rights of way of the Louisville & Nashville Railroad Company, or the lines where the points in question were located, but that a determined, persistent, and unavailing effort was made under the law and in the several courts by the telegraph company to retain its poles and wires along the railroad rights of way after the termination of the contract in 1909. W. U. Tel. Co. v. S. & N. Ala. R. Co., 184 Ala. 66, 62 South. 788; L. & N. v. W. U. Tel. Co., 195 Ala. 124, 71 South. 118, Ann. Cas. 1917B, 696; W. U. Tel. Co. v. L. & N., 199 Ala. 441, 74 South. 946; W. U. Tel. Co. v. L. & N., 202 Ala. 542, 81 South. 44; W. U. Tel. Co. v. L. & N., 206 Ala. 368, 89 South. 518; W. U. Tel. Co. v. L.

& N., 206 Ala. 371, 89 South. 520; W. U. Tel. Co. v. L. & N., 244 U. S. 649, 37 Sup. Ct. 743, 61 L. Ed. 1371. See, also, Ala. Pub. Service Com. v. L. & N., 206 Ala. 326, 89 South. 524.

After this unsuccessful litigation on the part of the Western Union with the railroad company, after its contract rights to use the railroad rights of way had expired, the telegraph company could not lawfully remain on the right of way and conduct its telegraphic business without the consent of the railroad. Without that consent, under the facts of the case, it would have been guilty of a trespass to have so remained. That company, acquiescing in the repeated decisions of this court, had the right to cease the use of its wires and the occupancy of the railroad lands by its poles and wires as theretofore constructed and located on such rights of way, and also had the right to sell its properties thereon to the Louisville & Nashville Railroad Company. Ala. Pub. Service Com. v. L. & N., supra, all the justices concurring on application for rehearing. Such a sale was not required by law to be authorized or approved by the Public Service Commission.

If it be conceded that the principles of law applicable to steam railroads apply to telegraph companies, and since there is no express legislation to the end contended for by appellant, has the state impliedly consented to the withdrawal of telegraph service by the Western Union from the towns and villages in question? The rule announced by the courts is well stated in Gates v. Boston, etc., Co., 53 Conn. 333, 342, 343, 5 Atl. 695, 699:

"It is true that the charter is permissive in its terms, and probably no obligation rests upon the corporation to construct the railroad; the option to exercise the right of eminent domain and other public rights is granted. And when that option has been made, and the corporation has located and constructed its line of track, exercising the power of the state in taking property of others, and in so locating and constructing its road, has invited and obtained subscriptions upon the implied promise to construct and operate its road, has commenced to operate the road under the granted powers, thereby inducing the public to rely, in their personal and business relations, upon that state of affairs; by so accepting and acting upon the chartered powers a contract exists to carry into full effect the objects of the charter, and the capital stock, franchises and property of the corporation stand charged primarily with this trust. The large sovereign powers given by the state to railroad corporations are granted and exercised only upon the theory that these public rights are to be used to promote the general welfare. Having exercised those powers the corporation has no right against the will of the state to abandon the enterprise, tear up its track, and sell its rolling stock and other property, and divide the proceeds among the stockholders.

"The possible effects of the exercise of such a claimed power are utter disaster to the great interests of the state, certain destruction of private property in which whole communities created and existing upon the faith of the continuous use of the chartered powers are interested, and, indeed, the life of the citizen as well as his property rights, are thus jeopardized. Upon principle it would seem plain that railroad property once devoted and essential to public use, must remain pledged to that use, so as to carry to full completion the purpose of its creation; and that this public right, existing by reason of the public exigency, demanded by the occasion, and created by the exercise by a private person of the powers of a state, is superior to the property rights of corporations, stockholders and bondholders. To this effect also is the weight of authority."

See State of Iowa v. Old Colony Trust Co., 215 Fed. 307, 131 C. C. A. 581, L. R. A. 1915A, 549, note.

Such being the implied contract between the parties, the state must do no act to render the discharge of duty and the conduct of business by defendant impracticable, except as may be necessary under the police power. That is to say, the state must do no act rendering the discharge of the corporate duty and conduct of corporate business unreasonable and unjust. If so, the exaction would disregard the Fourteenth Amendment to the federal Constitution. If the foregoing regard is exacted of the state, its consent to a voluntary abandonment of service by a corporation may be evidenced (1) by a legislative act, or (2) by lawful action of a special body duly empowered by the Legislature to act in that behalf and to bind the state to the election or consent, and (3) may be impliedly expressed by the public policy of the state. In Union Pacific v. C., R. I. & P., supra, the Chief Justice said:

"It is impossible for us to ignore the great policy in favor of continuous lines thus declared by Congress, and that it is in effectuation of that policy that such business as will make such connections effective are made.

"We are of the opinion that it was within the powers of the Pacific Company to enter into contracts for running arrangements, including the use of its tracks, and the connections and accommodations provided for, and we cannot perceive that this particular contract was open to the objection that it disabled the Pacific Company from discharging its duties to the public. By the contract the Pacific Company parted with no franchise, and was not excluded from any part of its property or the full enjoyment of it. What it agreed to do was to let the Rock Island into such use of the bridge and tracks as it did not need for its own purpose * * * in the furtherance of the demand of a wise public policy." 163 U. S. 589, 16 Sup. Ct. 1183, 41 L. Ed. 274.

What, then, is or has been the expressed public policy of the state in regard to erecting and maintaining telegraph lines along rights of way of railroads for the past 50

years? An act to encourage the construction and operation of telegraph lines in this state was approved April 4, 1873 (Acts 1872–73, p. 130). The liberal provisions thereof were carried into successive Codes (1876, §§ 1930–1932; 1886, §§ 1652–1654; 1896, §§ 1244–1246); and such provisions were omitted from the Code of 1907. Acts 1872–73, p. 63 (Code 1876, § 3580; Const. 1875, § 11, article 14), provided for the acquisition of rights of way, franchises, or easements over lands belonging "to another person or corporation," etc.; that, if such corporation or person "shall not agree with the owner or person or corporation authorized to sell or control the same, for the purchase thereof, application therefor may be made by petition to the probate court," etc., for the condemnation of same. Note that this right of application to court was after failure to agree with the owner, etc.

[3] The court takes judicial notice of the time of the extended development and activity (Hodge v. Joy [Ala. Sup.] 92 South. 171;[1] Clifton Iron Co. v. Dye, 87 Ala. 468, 6 South. 192) that followed such statutes in the acquiring of such rights of way or franchises and of the building of telegraph lines in the state. In line with this public policy of the state this court affirmed a judgment rested on a verdict finding that the railroad company was not entitled to damages in condemnation of its right of way by a telegraph company (N. O., M. & T. v. S. &. A. Tel. Co., 53 Ala. 211, 214), and affirmed a judgment for nominal damages on condemnation, longitudinally, of a right of way over a railroad right of way, saying:

"The railroad company has its right of way, it is difficult to see how the damages sustained by the road can be anything more than nominal." M. & O. v. Postal Tel. Co., 120 Ala. 21, 35, 24 South. 408, 412.

This was the construction of the earlier statute which was radically different from the present statute. L. & N. v. Western Union, 195 Ala. 124, 135, 71 South. 118, Ann. Cas. 1917B, 696. Under the earlier statutes and the expressed public policy in Western Union v. L. & N., 202 Ala. 542, 546, 81 South. 44, it is recited that in 1881 the Western Union acquired the rights of the various telegraph companies in Alabama and operated same along rights of way of railroads—of American Union Telegraph Company and the South and Atlantic Telegraph Company, and so operated the same, longitudinally, along railroad rights of way. Such was the public policy of this state and of its statutes when action was taken thereunder by the Western Union and its predecessors in title or right in acquiring easements by condemnation and by contract over rights of way of railroads in the state, and along the instant right of way of the Louisville & Nashville

Railroad, on which are situated most of the towns and villages indicated in the pleading. It has been noted that it was a condition precedent to the exercise of the right of condemnation under the former statute that the applicant therefor had failed to "agree with the owner, or person or corporation authorized to sell or control the same, for the purchase thereof." Acts 1872–73, p. 63; Code, 1876, § 3580. Of this status by contract in 1884, under existing law, counsel for appellee observe:

"The telegraph company, under the expressed public policy of the state 'to encourage the construction and operation of telegraph lines in the state of Alabama,' had the right to condemn a right of way for its telegraph lines along the right of way of the Louisville & Nashville Railroad Company for a mere nominal amount, and this fact was well known to the railroad company. It was a condition precedent to the exercise of such right of condemnation, however, that an effort should first be made with the railroad company to agree as to the amount of the purchase price to be paid therefor. Code 1876, § 3580. We must assume that, as the result of negotiations looking to the acquisition by the telegraph company of a right of way over the railroad right of way, the officials of the Louisville & Nashville Railroad Company decided that it was better to agree with the Western Union as to the terms on which they would be willing for the telegraph company to acquire such right rather than suffer condemnation proceedings and the award of mere nominal damages, and that the contract of 1884 was the result. The Western Union officials had every right to expect that at the expiration of this contract they would still have the right to condemn a right of way over the railroad right of way if the contract proved burdensome to the telegraph company; otherwise it would have been a very simple matter for them at that time to have gone into the courts and condemned the right of way."

That is to say, the person or corporation seeking the easement had the right (on failure to agree) to condemn for the longitudinal use of the railroad right of way, and, having acquired the same by contract, naturally did not expect that the right acquired by agreement was or would be less than that which would have been acquired by condemnation, by reason of a change of the statute. However, it was a fact that a statute was subject to change at the will of the Legislature, and so the public policy of the state.

The statute providing for contract and condemnation of such easements was materially changed by Acts 1903, pp. 374, 376, § 3, and it was codified as section 3867 of the Code of 1907. As the amended statute was construed by this court, it limited the right of condemnation of lands for public use in the proviso that, if the property sought to be condemned or any part thereof has already been subjected or devoted to a public use, etc., it "shall not be taken for another and different character of public use unless an

---

[1] 207 Ala. 198.

actual necessity for the specific land * * * shall be alleged and proven." M. & B. v. L. & N., 192 Ala. 136, 139, 68 South. 905; L. & N. v. Western Union (1916) 195 Ala. 124, 71 South. 118, Ann. Cas. 1917B, 696; Western Union v. L. & N. (1917) 199 Ala. 441, 74 South. 946; Ala. Pub. Service Com. v. L. & N., 206 Ala. 326, 89 South. 524. This change of policy of the state in such matter was recognized in the case last cited, where it was said:

"It is the policy of this state, formulated in section 3867 of the Code of 1907, meaning, in other words, that it is in the judgment of the Legislature, to the best interest of the public, that, in the circumstances affecting the relations between appellee and the Western Union, the latter should no longer be allowed to maintain and operate its telegraph lines over and upon the former's rights of way; and this declaration of public policy being within the constitutional competency of the Legislature, to judicially condemn it would be plain usurpation. Ex parte City of Birmingham, supra," 199 Ala. 9, 74 South. 51.

The contract between the Western Union and the Louisville & Nashville of date of 1884 was terminated in 1909, and thereafter extended for the years 1910, 1911, and 1912. It was protected under the Constitution, and its material provision for termination was not limited by subsequent statutes that would compel its assent by the state or its administrative body. If the state had no such power, the Public Service Commission did not have it, though clothed with large discretion and administrative functions. Johnson v. Craft, 205 Ala. 386, 87 South. 375; Hill v. Moody (Ala. Sup.) 93 South. 422.[2] The contract right for the easement was required, if possible, to be secured by law; this having been done, its terms were and remained inviolate to August 18, 1912, the date the parties could not agree to an extension thereof.

It is shown by the record that before the expiration of the contract the Western Union had attempted by condemnation to obtain a continuation of its easement over the right of way of the Louisville & Nashville, and this effort proved fruitless, as we have indicated. L. & N. v. Western Union, 195 Ala. 124, 138, 139, 71 South. 118, Ann. Cas. 1917B, 696; Western Union v. L. & N., 206 Ala. 368, 89 South. 518; Id., 206 Ala. 371, 89 South. 520. This changed public policy of the state under the statute, and given expression in the last-cited decisions, recognized and declared the duty of the Western Union to remove its lines, poles, and other physical properties from the right of way of the Louisville & Nashville, and that it could "no longer be allowed to maintain and operate its telegraph lines over and upon the former's rights of way." Ala. Pub. Service Com. v. L. & N., supra. Thereafter it could not remain on that right

_____
[2] 207 Ala. 325.

of way (against the will of the Louisville & Nashville) except as a trespasser.

[4] Having elected in 1912 finally to terminate its contract or lease, as it had the right to do, and initiated the fruitless proceedings for condemnation that it might serve the public commercially at the points indicated, the Western Union cannot by statute or order of the Alabama Public Service Commission or by judgment of this court (its former announcements in construction of Code, § 3867, being unchanged) be compelled to remain on the railroad right of way to become a trespasser thereon. Ala. Cent. v. Ala. Pub. Service Com., 200 Ala. 536, 76 South. 862, L. R. A. 1918C, 293; Western Union v. L. & N., 206 Ala. 368, 89 South. 518; Id., 206 Ala. 371, 89 South. 520. Its visible properties thereon had been disposed of pursuant to law, or sold to the Louisville & Nashville, and declared by this court to be within the law. Ala. Pub. Service Com. v. L. & N., 206 Ala. 326, 89 South. 524.

The effect of the order of the Alabama Public Service Commission of date April 30, 1920, was to compel the Western Union to remain on said rights of way as a trespasser or by contract as a tenant of the Louisville & Nashville. Neither this court nor the Alabama Public Service Commission can make a new contract for the parties (Ala. Cent. v. Ala. Pub. Service Com., supra), nor force the parties into a continuation of their former contract relation to the end that the several towns and villages in question may have commercial telegraphic service.

In Northern Pacific v. State of North Dakota, 236 U. S. 585, 595, 35 Sup. Ct. 429, 432, 59 L. Ed. 735, 741, (L. R. A. 1917F, 1148, Ann. Cas. 1916A, 1), Mr. Justice Hughes said:

"The railroad property is private property devoted to a public use. As a corporation, the owner is subject to the obligations of its charter. As the holder of special franchises, it is subject to the conditions upon which they were granted. Aside from specific requirements of this sort, the common carrier must discharge the obligations which inhere in the nature of its business. It must supply facilities that are reasonably adequate; it must carry upon reasonable terms; and it must serve without unjust discrimination. These duties are properly called public duties, and the state within the limits of its jurisdiction may enforce them. The state may prescribe rules to insure fair remuneration and to prevent extortion, to secure substantial equality of treatment in like cases, and to promote safety, good order and convenience.

"But, broad as is the power of regulation, the state does not enjoy the freedom of an owner. The fact that the property is devoted to a public use on certain terms does not justify the requirement that it shall be devoted to other public purposes, or to the same use on other terms, or the imposition of restrictions that are not reasonably concerned with the proper conduct of the business according

to the undertaking which the carrier has expressly or impliedly assumed."

[5] Telegraphic service by appellee to the towns and villages in question, on a commercial basis, was an incident to the contract rights of the Western Union and the railroad company along the rights of way on which were located the telegraph lines and poles of the former. That right having ceased to exist, by involuntary action of the Western Union, and the right under the law to operate the lines and give service at the points in question having ceased to exist, the case presented is that where a new line is to be established and a new commercial service extended; and neither the state, nor its Public Service Commission, had authority to compel the Western Union to devote or dissipate its other properties to secure communication or transmission by the erection of new lines over other lands or along other public highways, over and along which the company had not theretofore served said towns and villages. The discontinuance of service at such points under such easement and along such ways (in the language of the decision in Ala. Pub. Service Com. v. L. & N., supra), cannot "be laid to the sale and purchase thereof" (of its lines and poles and other physical properties on railroad rights of way), "but must be accepted as a legitimate result of the decrees rendered in the litigation between the telegraph company" and the railway company. This was an involuntary discontinuance of the former service, within the exception to the foregoing general rule forbidding discontinuance by such public service corporation without the consent of the state.

The order of the Public Service Commission must be construed as one to furnish initial service at points indicated. Plea 4 invoked the protection of the Fourteenth Amendment to the Constitution of the United States. In considering the effect of the order, only total intrastate business can be considered. Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819; Wood v. Vandalia R. Co., 231 U. S. 1, 34 Sup. Ct. 7, 58 L. Ed. 97, 100. In Brooks-Scanlon Co. v. R. R. Com. of La., 251 U. S. 396, 398, 40 Sup. Ct. 183, 184 (64 L. Ed. 323), it was said:

"It is true that if a railroad continues to exercise the power conferred upon it by a charter from a state, the state may require it to fulfill an obligation imposed by the charter even though fulfillment in that particular may cause a loss. Missouri P. R. Co. v. Kansas, 216 U. S. 262, 276, 278, 54 L. Ed. 472, 478, 479, 30 Sup. Ct. Rep. 330."

Under the circumstances we have indicated, commercial service sought to be enforced by the order cannot be said to be an obligation imposed by the charter of the defendant.

Plea 4 avers, and the evidence shows, that on the entire intrastate business of the telegraph company it failed to earn a fair return on its property devoted thereto; and the instant order will be tested by the same rule as if a new franchise was to be obtained and new lines constructed to the points indicated. The state controverts the sufficiency of this plea. However this may be, under the pleading and facts of record the telegraph company was under no duty to apply to the Public Service Commission for consent to dispose of its physical properties, and therefore to discontinue service. Hence the discontinuance was involuntary. The federal authorities are not to the contrary.

While the contract for mileage or wheelage for 45 miles over another road to enter the city of Omaha was approved by the Supreme Court of the United States (Union Pacific v. C. R. I. & P., supra), no one will seriously contend that the state authority could have compelled the governing officials of the respective railway companies to enter into such contract relation, though one of the parties may have evidenced in writing its desire to so contract. In a sense, this is the contrary of the state of facts here presented by pleading and proof. The right of the Western Union in the use of its poles and lines to give commercial service to the towns and villages in question, formerly served over an easement along the railroad right of way, has been stricken down by authority of law, which result the telegraph company sought to prevent in the several courts having jurisdiction of the subject-matter and the parties and which issue was the subject-matter of that litigation. Being deprived by law of the easement theretofore enjoyed by it in the discharge of its duties to said towns and villages, for all practical purposes, under the law, defendant stands in relation to the state, its Public Service Commission, and the public to be served as if a new line was being required to be built and the service to be first accorded to the public in the respective localities.

[6] The fact that the Louisville & Nashville, which purchased the physical properties and materials employed in its lines along said rights of way, cannot be required to accord and furnish the commercial telegraphic service to said villages or towns (Ala. Pub. Service Comm. v. L. & N., supra) does not cast upon the defendant the duty in law to build new lines of transmission over new easements or rights of way to be acquired in order that it may establish new offices at such points to give public, commercial service.

The fact that the Louisville & Nashville informed the Alabama Public Service Commission in writing, before the decision or order of April 30, 1920, it was "willing to rent pole space to defendant on the usual terms and conditions of said railroad according to certain provisions" with which, it was

stated in said letter, "defendant was familiar," and that "telegraph service to the public might be renewed by defendant to said 21 points," did not cast upon the telegraph company the duty to the public to contract with the railroad company for an easement along the railway company's right of way or the duty to construct and maintain new lines of telegraphic communication and service for commercial purposes to the points in question within the state. The right of freedom of contract under organic law and of due process may not be abridged or denied, for the state may not make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of his life, liberty, or property without due process of law. The Louisville & Nashville Railroad Company has been protected in the right of contract and purchase of the physical properties of the Western Union that were located upon and over its rights of way, and as such purchaser has not been subject, beyond the powers of its charter, to discharge the service in question. The right of contract and sale by the Western Union of said properties under the law and circumstances of the case has been sustained by this court, though that contract and sale were without the consent of the Public Service Commission. In that sales contract both corporations were equally protected under the law.

[7] Having no easement or physical properties with which to accord commercial telegraphic service to the several towns and villages in question, the order of the Alabama Public Service Commission requiring the Western Union to give commercial service to such localities was unreasonable, unjust, and void as placing upon defendant an unreasonable burden in the attempt to compel it to acquire new easements or rights of way and to build new lines to the said points, to which commercial service had been involuntarily abandoned by reason of the decisions of this court having jurisdiction of the same subject-matter and the parties hereto.

The judgment of the circuit is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.