[Railroad Commission of Alabama v. St. Louis & S. F. R. R. Co.]

# Railroad Commission of Alabama v. St. Louis & S. F. R. R. Co.

## Injunction.

(Decided January 3, 1916.   70 South. 645.)

1. **Railroads; Commissions; Orders; Train Service.**—Where the Railroad Commission entered two orders which, when collectively considered, are unreasonable in putting an unreasonable burden on the carrier, both orders must fall, even if each order is separately valid, as the court cannot select which order shall stand; but if one order is of itself valid, and the other invalid, the valid order stands and the other falls.

2. **Same; Presumption.**—Presumptively, an order of the Railroad Commission is reasonable and the court will not interfere therewith, unless it clearly appears that such order is unjust and unreasonable.

3. **Same; Additional Train Service.**—Where it appeared that complainant already operated three passenger trains each way daily, stopping at such points, two being fast trains, and one a local, an order of the Railroad Commission requiring complainant to operate an additional train over its line daily in each direction so as to serve four towns ranging in population from 600 to 1,800, and such proposed train, to be operated on a schedule fixed by the commission, would be passed by one of the fast trains, and it further appeared that the installation of the new train would require a large expenditure of money in addition to the operating expenses, such order was unreasonable.

4. **Commerce; Interstate Traffic; Order.**—Whether or not an order of a State Railroad Commission for the stoppage of interstate trains is valid as not directly regulating interstate commerce, is to be decided by considering the claims of both the interstate traffic and of the residents of the state through which the road passes, and where the latter's wants are adequately supplied under all the facts bearing on the subject, an order granting further demand to the embarrassment of rapid interstate transit, and of the road in competing with its competitors is an unwarranted interference with interstate commerce.

5. **Same.**—An order of the Railroad Commission of Alabama requiring the complainant railroad to stop two of its solid through trains at four towns in Alabama ranging in population from 600 to 1,800, which towns were already served by three passenger trains daily each way, and the trains affected by the order were exclusively interstate trains and were run at maximum speed consistent with safety, in order to make through connection with schedules over which complainant had no control, and the loss of time in making the stops ordered would compel complainant railroad to lose such connection, and it was shown that for many years complainant had had sharp competition in such through traffic which compelled it to give up many additional connections in order to make fast time and to meet competition, such order was an unreasonable restraint upon interstate traffic.

[Railroad Commission of Alabama v. St. Louis & S. F. R. R. Co.]

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Bill by the St. Louis & San Francisco Railroad Company to enjoin certain orders of the Alabama Railroad Commission for additional train service. Decree for complainant, and the Railroad Commission appeals. Affirmed.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. FORNEY JOHNSTON, for appellee.

GARDNER, J.—The original bill in this case sought an injunction against an order of the Railroad Commission of Alabama, docket No. 767, which required an extra train to be run each day over the complainant's road, for local service, between Sulligent and Birmingham, in each direction, which said order bears date of January 16, 1914. The schedule prescribed in said order required a train to leave Birmingham daily at or about 12 o'clock noon, and proceed westward to Sulligent, and another train to leave Sulligent at or about 12 o'clock, noon, and proceed eastward to Birmingham, each making all intermediate stops. While the original bill was pending testing the reasonableness of this order, the respondent commission on May 5, 1914, entered another order, bearing docket No. 781, requiring the said St. Louis & San Francisco Railroad Company, and the receivers in charge thereof, to make regular stops of their trains numbered 105 and 106 at Sulligent, Carbon Hill, Cordova, and Dora, Ala., for the receipt and delivery of passengers thereon. Thereupon the complainant filed a supplemental bill seeking similar relief against the said order above numbered 781. The complainant, the St. Louis & San Francisco Railroad Company, is shown to be in the hands of receivers appointed by the federal court, and they are made parties respondent to the bill.

Upon a submission of the cause for final decree on pleadings and proof, the judge of the city court, sitting in equity, granted the relief prayed for, and from this decree the respondent, Railroad Commission, prosecuted this appeal.

(1) It is first insisted by counsel for appellee, that, if both of the orders above referred to, when considered together, put an unnecessary and unreasonable burden upon the complainant,

then both orders should fall without regard to reasonableness of either, when considered separately, for the reason that this court has no power to exercise legislative functions, and therefore, as the commission entered the second order without any repeal or limitation upon the first, that this court is without the power to select which of said two orders should be permitted to stand. It is therefore urged that the only course open is to annul the outstanding orders and leave with the commission the question whether or not it will attempt to revive either. The trial judge, in response to this contention, used the following language, which meets our approval: "It seems to me that the true rule is, without a consideration of the frame of the present bills, that if each order, when considered separately and alone, is valid, but, when considered collectively and together, are oppressive and unreasonable, then both orders must fall, since the court cannot select which shall stand; and, if the first order is valid, but the second order of itself is invalid, then the first order should stand, but the second should fall, and likewise, if the first of itself is invalid, and the second is valid, then I see no reason why the second order should not stand. This conclusion makes it necessary to examine each order separately and in connection with the evidence."

In the opinion of the court below it is also stated that it was admitted by the state that it was unreasonable that both orders should stand, and his statement finds no denial in brief of counsel for the appellant here.

(2) It is recognized in this state, and it is unquestionably a salutory rule, that the order of the Railroad Commission is presumably reasonable, and the court will not overturn its finding unless it clearly appears that such order is unjust and unreasonable.—R. R. Com. of Ala. v. Ala. Northern Ry. Co., 182 Ala. 357, 62 South. 749; R. R. Com. of Ala. v. Ala. Great So. Ry. Co., 185 Ala. 354, 64 South. 13, L. R. A. 1915D, 98.

(3) As to order No. 767, requiring an additional passenger train, but little is found by way of argument in brief of counsel for appellant. It appears without conflict that the complainant railway company operates three passenger trains each way, stopping at all local points, including, of course, those stops here indicated. Two of these trains are through trains, running between Birmingham and Memphis. Trains numbered and referred

to as 103 and 104, between Birmingham and Memphis, carry sleepers. One of the three trains appears to be entirely local, and operates between Amory, Miss., and Birmingham, including all of these points. The population of the towns here involved, without reference to that of the precinct in which they are located, is stated in this record to be respectively as follows: Sulligent, 619; Carbon Hill, 1,627; Cordova, 1,747; and Dora, 916. The schedule of these three trains each way is given in detail, as well also as that of trains 105 and 106, which do not make these stops. Train 105 runs through Sulligent at 12.30 p. m., and train 921, from Memphis to Birmingham, stops at that station at 12:50 p. m.; this latter train serving Sulligent and all the towns between that point and Birmingham. The order requiring an additional train fixes the schedule for leaving Sulligent at or about noon, and the evidence is without dispute that this local train would be overtaken within a few stations and required to side track for No. 105 to pass, which, of course, taken in connection with the delay of local travel would reduce the interval between the new train leaving at noon and 921, which leaves at 12:50, so that they would be run practically together, or, at least, somewhat after the fashion of what is called a first and second section. The passenger revenue from these stations is also given; and the evidence deals with many minute details concerning the schedule of these trains and the traffic of the same, as well also as with a comparison with the service of other roads in that section. The evidence is rather voluminous, and a detailed discussion of the same would serve no good purpose, and is considered entirely unnecessary. The addition of this new train, it is shown without dispute, would require a large expenditure of money, aside from the operating expenses.

Without further reference to the testimony, therefore, suffice it to say that the same has been given careful consideration, and that we are in accord with the view of the court below that the order numbered 767 is manifestly unreasonable. If there exist imperfections in the service of these three trains, or in the equipment of the same, or in their schedule, which the citizens of these communities desire to remedy, this end may be more readily accomplished by seeking an order for that purpose, but we think it clear that the evidence in this record does not justify any order for an additional train. Indeed, counsel for the ap-

[Railroad Commission of Alabama v. St. Louis & S. F. R. R. Co.]

pellant lay but little stress upon this feature of the case. We pass, therefore, to a brief consideration of order 781, requiring the stoppage of trains 105 and 106 at these points.

(4, 5) These two trains operate between Kansas City and Birmingham, and are operated as solid trains, and are known as the Kansas City-Florida Special, making connection in Birmingham with the Southern Railway to Jacksonville, Fla. The equipment of the trains goes entirely through, with the exception of the baggage car and the dining car. These trains are exclusively interstate trains, and are not used for local traffic. It is without dispute that they are now run at their maximum speed consistent with safety. Originally, when these trains stopped at the stations here involved, there were only two local trains serving these communities, and it appears that the trains were given a greater margin as to other connections. The history of these interstate trains is to be found in the record, together with a detailed account of the schedule which is maintained in an effort to make important connections with other roads and meet competition in interstate travel. It is further shown that these connections are such that the schedules are fixed arbitrarily, and that over them the complainant has no control whatever. It further appears without dispute that the loss of a few minutes in its regular schedule would be followed by serious consequences in so far as making these connections is concerned.

It has been held by the Supreme Court of the United States that the state Railroad Commission may in some certain instances order the stoppage of interstate trains, if they do not directly regulate interstate commerce.—*Lakeshore & Michigan Ry. Co. v. Ohio*, 173 U. S. 285, 19 Supt. Ct. 465, 52 L. Ed. 702; *Atlantic Coast Line Ry. Co. v. Wharton*, 207 U. S. 328, 28 Sup. Ct. 121, 52 L. Ed. 230. Questions of this character have frequently been before the Supreme Court of the United States for review.—*Herndon v. Chicago, Rock Island & Pacific Ry.*, 218 U. S. 135, 30 Sup. Ct. 633, 54 L. Ed. 970; *Mississippi R. R. Commission v. Illinois Central R. R. Co.*, 203 U. S. 335, 27 Sup. Ct. 90, 51 L. Ed. 209; *Atlantic Coast Line v. Wharton, supra*.

The following quotation from some of the above authorities are here in point:

In *Atlantic Coast Line R. R. Co. v. Wharton, supra*, is the following: "When, therefore, an order made under state authority

to stop an interstate train is assailed because of its repugnancy to the interstate commerce clause, the question whether such order is void may be tested by considering the nature of the order, the character of the interstate commerce train to which it applies, and its necessary and direct effect upon the operation of each train. But the effect of the order as a direct regulation of interstate commerce may also be tested by considering the inadequacy of the local facilities existing at the station or stations at which the interstate commerce train has been commanded to stop."

In *Mississippi R. R. Commission v. Illinois Central Railroad, supra,* it is said that: "Whether there has or has not been an [improper and] illegal interference" by such an order of the Commission with the interstate commerce of the railroad "is a question of law arising from the facts."

The opinion in that case concludes as follows: "The transportation of passengers on interstate trains as rapidly as can with safety be done is the inexorable demand of the public who use such trains. Competition between great trunk lines is fierce, and at times bitter. Each line must do its best even to obtain its fair share of the transportation between states, both of passengers and freight. A wholly unnecessary, even though a small, obstacle ought not, in fairness, to be placed in the way of an interstate road, which may thus be unable to meet the competition of its rivals. We by no means intend to impair the strength of the previous decisions of this court on the subject, nor to assume that the interstate transportation, either of passengers or freight, is to be regarded as overshadowing the rights of the residents of the state through which the railroad passes to adequate railroad facilities. Both claims are to be considered, and after the wants of the residents within a state or locality through which the road passes have been adequately supplied, regard being had to all the facts bearing upon the subject, they ought not to be permitted to demand more, at the cost of the ability of the road to successfully compete with its rivals in the transportation of interstate passengers and freight."

We deem it unnecessary to enter into a discussion of the evidence bearing upon these facts of the case. It appears that this latter order, No. 781, of date May 5, 1914, was entered by the commission without any evidence additional to that which was

considered when the order No. 767 was made relating to an additional train. In addition to the evidence in the record before us, there were sent up for our inspection photographs of the trains, showing their full equipment, which now serve these localities, as well also as photographs of the business sections of the towns involved.

The order requires the stoppage of these through trains at the stations of Sulligent, Cordova, Carbon Hill, and Dora, but no witness seems to have been examined in so far as Sulligent is concerned, and no insistence appears to have been made on behalf of that community as disclosed by this record. By the conclusion we have here reached we do not mean to indicate that the citizens of these communities have not been without some cause for complaint as to the service rendered, such as maintenance of schedule time and additional equipment of the trains it deemed necessary. Upon these questions we are not called upon to pass as they are not here involved, but such matters are of the character to be remedied by a complaint to the Railroad Commission upon a proper petition for proper orders. We have also not been unmindful of the rule as stated in *Railroad Commission of Alabama v. Alabama Northern Railroad Company, supra,* and of the necessity for the strict observance thereof by this court in reviewing the orders of the Railroad Commission. Under the peculiar facts and circumstances, however, as disclosed by this record, we are of the opinion that the trial court reached a correct conclusion in regard to order No. 781, which we have here just above been considering. The learned trial judge concluded his opinion in the following language, which summarizes the result of his investigation into the evidence in this case, and in which summary we concur: "It is shown without contradiction that for many years this road has been striving to obtain and retain its share of the through traffic from the West to the Southeast in competition with other roads. It is shown how they have given up one connection after another in order to meet competition and make reasonably quick schedules. Without controversy, it is shown that in other states it has had to discontinue many stops of relatively greater importance than the Alabama points discontinued. Complainant also shows without contradiction that, if the order is not suspended, the time consumed in making these stops would compel it to lose its interstate connection, with

[Smith v. Dallas Compress Co., et al.]

a consequent loss of interstate business. Were these statements controverted, there might be some doubt as to the effect of the orders, but the evidence is without conflict in this regard, and it follows that the order is an unreasonable restraint upon interstate traffic, and is therefore unauthorized."

In this view of the case and in the light of the above-cited authorities of the Supreme Court of the United States, we conclude that said order No. 781 cannot stand.

It follows, therefore, that the decree of the court below must be affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.