5 So.2d 816

**BOSWELL v. BETHEA et al.**

**6 Div. 792.**

Supreme Court of Alabama.

Jan. 29, 1942.

Arthur D. Shores, of Birmingham, for appellant.

Thos. S. Lawson, Atty. Gen., and John W. Vardaman, Asst. Atty. Gen., for appellees.

294

**THOMAS, Justice.**

The question presented is the right of appeal from the ruling of the Board of Registrars of Jefferson County. By petition appellant sought to register to vote in Jefferson County, Alabama, and have his qualifications as such alleged elector determined by the said Board of Registrars. State v. Crenshaw, 138 Ala. 506, 35 So. 456; Skinner's Alabama Constitution Annotated, Art. 8, § 186, subsection 6th, p. 676, Const. 1901, § 186, subd. 6; Code 1940, Tit. 17, § 35.

Appellant's petition to register is challenged by demurrer, which is in accord with the rules that prevail for testing such pleading. 49 Corpus Juris, § 132; Beatty v. Hartwell, 217 Ala. 239, 115 So. 164; Tutton v. Liverpool & London & Globe Ins. Co., Ltd., 237 Ala. 230, 186 So. 551.

The well-established rule is stated in Fife v. Pioneer Lumber Co., 237 Ala. 92, 185 So. 759, 760, that, "Where some of several grounds of demurrer are sufficient, and judgment sustaining demurrer is general, the ruling will be referred to a ground that is well taken."

It is insisted by the attorney general that the trial court correctly sustained demurrers to the petition in the cause for the reason that such initial pleading failed to show that petitioner was not already a registered elector of Jefferson County. Petitioner also fails to show, except by conclusion, that a proper application was made to the board of registrars, and on what facts or qualifications he based his petition, *merely alleging that he made a "proper legal application to said board."* These defects are specifically pointed out by appropriate grounds of demurrer. Objections to the sufficiency of the pleading were sustained by the trial court.

The insistence of appellant is that a pleading which, with all reasonable inferences in favor of the pleader, shows facts entitling him to relief, is not subject to demurrer. Birmingham Railway, Light & Power Co. v. Hunnicutt, 3 Ala.App. 448, 57 So. 262; Hayes v. Miller, 150 Ala. 621, 43 So. 818, 11 L.R.A.,N.S., 748, 124 Am.St. Rep. 93; Barnett v. Freeman, 197 Ala. 142, 72 So. 395; Alabama Fuel & Iron Co. v. Bush, 204 Ala. 658, 86 So. 541; Woodstock Iron Works v. Stockdale, 143 Ala. 550, 39 So. 335, 5 Ann.Cas. 578; Kennon v. Western Union Telegraph Co., 92 Ala. 399, 9 So. 200.

The rule that obtains in this jurisdiction as to good pleading in civil cases is stated in Alabama Fuel & Iron Co. v. Bush, 204 Ala. 658, 86 So. 541, 542, supra, as follows: "Cardinal rules of pleading are that the matter pleaded or facts alleged must be (1) sufficient in law to avail the party who pleads it, and (2) alleged or deduced according to the forms of law. Will's Gould on Pleading, pp. 2, 3, 192, 361. A cause of action is made up of a duty and its breach. The duty—the relationship from which the duty springs—must be shown by the facts alleged; and the breach of the duty may be averred by way of a conclusion. * * *"

The rule of pleading conspiracy in a civil case, and adverted to in this case, is as follows (National Park Bank v. Louisville & N. R. R. Co., 199 Ala. 192, 199, 74 So. 69, 73): "* * * The acts complained of, however, must be definitely and accurately stated, so that, if the facts themselves should be admitted the court can draw a legal conclusion therefrom—thus the illegal purpose or means, which the conspirators meant to accomplish or to resort to, must be described accurately, for unless the object is illegal, or the means agreed upon are illegal, there is no actionable wrong. Singer Sewing Machine Co. v. Teasley [198 Ala. 673], 73 So. 969; Dwight Manufacturing Co. v. Holmes [198 Ala. 590], 73 So. 933; * * *"

The case of Giles v. Harris et al., 189 U.S. 475, 23 S.Ct. 639, 47 L.Ed. 909, proceeded in all the courts according to the rules that obtain in this state in civil causes and was by way of a bill in equity. This was under the constitutions now before us for consideration.

The instant pleader recognizes that the foregoing rules obtain as to his pleading to be filed in the circuit court and on which the issue of fact would be tried by the jury, as indicated by the excerpt from his brief as follows:

"A person to whom registration is denied shall have the right of appeal by filing a petition to the Circuit Court or Court of like jurisdiction for the County in which he seeks to register to have his qualification as an elector determined. Constitution of Alabama, 1901, Section 186 (6); 1928 Code of Alabama Section 384.

"A pleading which with all reasonable inference in favor of the pleader, show facts entitling him to relief is not subject to demurrer. Birmingham Railway, Light & Power Co. v. Hunnicutt [3 Ala.App. 448], 57 So. 262; Hayes v. Miller [150 Ala. 621], 43 So. 818 [11 L.R.A.,N.S., 748, 124 Am. St.Rep. 93]; Barnett v. Freeman [197 Ala. 142], 72 So. 395; Alabama Fuel & Iron Co. v. Bush [204 Ala. 658], 86 So. 541; Woodstock Iron Works v. Stockdale [143 Ala. 550], 39 So. 335 [5 Ann.Cas. 578]; Kennon et al. v. Western Union Telegraph Co. [92 Ala. 399], 9 So. 200; C. H. Minge & Co. v. Barrett Bros. Shipping Co. [10 Ala. App. 592], 65 So. 671; Sogn v. Koetzle [38 S.D. 99], 160 N.W. 520."

Had the instant case been presented by a bill as was done in the Giles case, supra, the observation made in State et al. v. Mobile & O. R. Co. et al., 228 Ala. 533, 154 So. 91, 93, would have been pertinent. There the court said: "* * * it is significant that the appeal is to the equity side of the court. When so, that court, in the absence of restraint, exercises its own peculiar equity powers and remedies. * * * When a cause is thus removed to the equity court, the one doing so is the movant, and occupies the position of a *complainant,* and should file a complaint in that court *in the nature of a bill in equity,* setting out in detail the specific nature of the claim made by the complainant in respect to the tax and pray for appropriate relief, and may invoke any of the ordinary equity powers of that court. An issue should thus be made as in other equity cases. Cornelius v. Moore, 208 Ala. 237, 94 So. 57; Burns v. Lenoir, 220 Ala. 422, 125 So. 661. Appellee did file such a complaint in this suit." [Italics supplied.]

It is noted that such is the rule that obtains from appeals in tax cases where an assessment is contested before the probate court or an administrative board of the State of Alabama. The instant appeal is from an administrative board of the State of Alabama, the State Board of Registrars, to the circuit court, and in a case where a jury is demanded. What then are the recognized rules and presumptions that obtain as to the action and challenge thereof of an administrative board of the State? Appellant's counsel recognized the same as hereinabove set out.

When the instant pleading is examined, the appellant from said administrative board to the circuit court presented his appeal by petition in the form of a bill and in which that pleader is attempting to conform to the general requirements of good pleading as tested by the decisions of the Supreme Court of Alabama, some of which appellant has indicated in his brief as hereinabove noted.

The reporter of decisions will set out the bill of petitioner in extenso.

The appellant's counsel recognized that he was challenging the action of the state administrative, the Board of Registrars, and charging them with a fraud in denying him the alleged right of registration as an elector, and that his appeal to the circuit court by his bill and demurrer thereto must conform to and be governed by the rules that obtain in this and federal jurisdictions.

In the case of United States v. Morgan, 307 U.S. 183, 191, 59 S.Ct. 795, 799, 83 L. Ed. 1211, Mr. Justice Stone (the now Chief Justice) said: "* * * In construing a statute setting up an administrative agency and providing for judicial review of its action, court and agency are not to be regarded as wholly independent and unrelated instrumentalities of justice, each acting in the performance of its prescribed statutory duty without regard to the appropriate function of the other in securing the plainly indicated objects of the statute. Court and agency are the means adopted to attain the prescribed end, and so far as their duties are defined by the words of the statute, those words should be construed so as to attain that end through co-ordinated action. Neither body should repeat in this day the mistake made by the courts of law when equity was struggling for recognition as an ameliorating system of justice; neither can rightly be regarded by the other as an alien intruder, to be tolerated if must be,

but never to be encouraged or aided by the other in the attainment of the common aim."

The foregoing decision was a construction of the packers and stockyard act to secure to patrons of the yards prescribed as such the service at just and reasonable prices.

In the case of United States v. Rock Royal Co-operative, 307 U.S. 533, 567, 568, 59 S.Ct. 993, 1010, 83 L.Ed. 1446, in applying this doctrine, Mr. Justice Reed answered a contention that an administrative order was void in the following language: "Such an administrative determination carries a presumption of the existence of a state of facts justifying the action far too strong to be overturned by such suggestions as are made here."

The above decision employed the required forms of pleading and the subject matter was milk products within a marketing area comprising the City of New York and adjacent counties.

The idea that an administrative order carries a presumption of regularity and that it is to be overturned only in case of clear and unequivocal evidence or pleadings to point out wherein such order is void, has been recognized by the courts through an unbroken line of decisions. This presumption ordinarily arises in cases involving rates established by the Interstate Commerce Commission. However, the presumption of regularity of the administrative order has been extended to apply to the establishment of rates by a state public service commission for carriers, Darnell v. Edwards, 244 U.S. 564, 569, 37 S.Ct. 701, 61 L.Ed. 1317; administrative boards regulating mining of coal, Plymouth Coal Co. v. Pennsylvania, 232 U.S. 531, 545, 34 S.Ct. 359, 58 L.Ed. 713; administrative bodies fixing rates for insurance, Ætna Ins. Co. v. Hyde, 275 U.S. 440, 447, 448, 48 S.Ct. 174, 72 L.Ed. 357; administrative boards prescribing containers for fruit, Pacific States Box & Basket Co. v. White, 296 U. S. 176, 186, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853; administrative regulations prescribing the amount of gas and oil to be mined, Thompson v. Consolidated Gas Co., 300 U.S. 55, 69, 57 S.Ct. 364, 81 L.Ed. 510; administrative boards provided to pass on refunds of AAA taxes, Anniston Mfg. Co. v. Davis, 301 U.S. 337, 357, 57 S.Ct. 816, 81 L.Ed. 1143.

This doctrine has been recognized and applied in the courts of this state. Thus,

in the case of R. R. Commission of Alabama v. Alabama G. S. R. R. Co., 185 Ala. 354, 359, 64 So. 13, 15, L.R.A.1915D, 98, Mr. Justice DeGraffenried writes for the court, and says: "When a board is created for the purpose of carrying a law into execution, all legal intendments are with the orders of such board, and such orders will be upheld unless their invalidity is shown by those who complain of such orders. The legal presumption is that such orders are reasonable; that they were made upon proper evidence; and that they are valid. It is only when such orders were unauthorized by the law or were made by such board *without* or in *excess of legal* authority, or were unreasonable, that they are void."

See also R. R. Comm. of Alabama v. St. Louis & San Francisco R. R. Co., 195 Ala. 527, 529, 70 So. 645; R. R. Comm. of Alabama v. Louisville & N. R. R. Co., 197 Ala. 161, 164, 72 So. 397; Alabama Power Co. v. City of Ft. Payne, 237 Ala. 459, 463, 464, 187 So. 632.

This principle is set out in 20 Am.Jur. 178, Evidence, Section 171.

In the case of United States v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 1005, 85 L. Ed. 429, an aggrieved party alleged that the secretary of agriculture had prejudged the case to be presented to him and had demonstrated such prejudice and bias as to disqualify him from further hearing the case. Mr. Justice Frankfurter discussed these charges and concluded that such prejudice and bias did not appear even though the Secretary of Agriculture had written a letter condemning the court for the decision previously rendered by it. The opinion is concluded with the statement that: "It will bear repeating that although the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other."

The case was dealing with the packers and stockyard act. 42 Stat. at Large 159, Chap. 64, 7 U.S.C.A. § 181 et seq.

For a further discussion by this Justice of the sanctity of administrative rulings see Federal Communications Comm. v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656.

It is apparent from these authorities that the decisions of various administrative

bodies are presumed to be regular and valid in all respects. The burden is on the one who would attack such action of such a board and this should be done by proper pleading and evidence. This burden is no less strong by reason of the fact that the question for decision is whether the individual should vote or should work.

It is unnecessary to observe that in the foregoing cases, touching the most serious matters of business life, the correct form of good pleading was found to be necessary and duly required and the same employed.

In the case of Phelps Dodge Corporation v. National Labor Relations Board, 313 U.S. 177, 61 S.Ct. 845, 846, 85 L.Ed. 1271, 133 A.L.R. 1217, Mr. Justice Frankfurter states the facts as follows: "The source of the controversy was a strike, begun on June 10, 1935, by the International Union of Mine, Mill and Smelter Workers at Phelps Dodge's Cooper Queen Mine, Bisbee, Arizona. Picketing of the mine continued until August 24, 1935, when the strike terminated. During the strike, the National Labor Relations Act came into force. Act of July 5, 1935, 49 Stat. at L. 449 [chap. 372], 29 U.S.C.A. §§ 151 et seq. The basis of the Board's conclusion that the Corporation had committed unfair labor practices in violation of § 8(3) of the Act [29 U.S.C.A. § 158(3)], was a finding, not challenged here, that a number of men had been refused employment because of their affiliations with the Union. Of these men, two, Curtis and Daugherty, had ceased to be in the Corporation's employ before the strike but sought employment after its close. The others, thirty-eight in number, were strikers. To 'effectuate the policies' of the Act, § 10(c) [29 U.S.C.A. § 160(c)], the Board ordered the Corporation to offer Curtis and Daugherty jobs and to make them whole for the loss of pay resulting from the refusal to hire them, and it ordered thirty-seven of the strikers reinstated with back pay, and the other striker made whole for loss in wages up to the time he became unemployable. Save for a modification presently to be discussed, the Circuit Court of Appeals enforced the order affecting the strikers but struck down the provisions relating to Curtis and Daugherty."

It was observed in the opinion: "The dominating question which this litigation brings here for the first time is whether an employer subject to the National Labor Relations Act may refuse to hire employees solely because of their affiliations with a labor·union. Subsidiary questions grow out of this central issue relating to the means open to the Board to 'effectuate the policies of this Act (chapter)', if it finds such discrimination in hiring an 'unfair labor practice'. Other questions touching the remedial powers of the Board are also involved. We granted a petition by the Phelps Dodge Corporation and a cross-petition by the Board, 312 U.S. 669, 61 S.Ct. 447, 450, 85 L.Ed. 1112, to review a decision by the Circuit Court of Appeals for the Second Circuit, 113 F. 2d 202, which enforced the order of the Board, 19 N.L.R.B. p. 547 [No. 60], with modifications. The main issue is intrinsically important and has stirred a conflict of decisions. National Labor Relations Bd. v. Waumbec Mills, 1 Cir., 114 F.2d 226."

The foregoing are several illustrations of the requirements for enforcement of natural rights in the courts,—the right to earn a livelihood within the just rules of pleading and evidence prescribed by the State and Federal Constitutions and statutes. The rights as an elector and to hold office are political privileges conferred by statutes and constitution and do not rise higher in their enforcement than the natural rights of our citizens. Therefore, the writer sees no good reason, under the law, why the review of the order of the instant administrative board should not be presented in proper and legal form. Less than this is an injustice to the rulings of such administrative boards, the Boards of Registrars of the several counties of this state.

It follows that the judgment of the trial court is affirmed since grounds of demurrer 6, 7 and 8 are well taken. The reporter will set out said grounds of demurrer in his report of this case.

Affirmed.

BROWN and LIVINGSTON, JJ., concur.

GARDNER, C. J., concurs specially as indicated.

BOULDIN and FOSTER, JJ., dissent.

KNIGHT, J., not sitting.

298

GARDNER, Chief Justice (concurring specially).

I find nothing in the Constitution or statute that requires formality of pleading in the petition for an appeal. But in the petition it should appear, though it may be by very general language, that petitioner is entitled to be registered as a voter, and that he has duly made application to the Board of Registrars, which application was denied.

Petitioner has shown that he is already an elector and the seventh ground of demurrer takes the point that it would appear double registration was sought. In this state of the petition, the court was justified in sustaining the demurrer. I therefore concur in the result.